MASON v. POSTAL TELEGRAPH CABLE CO.

1. EVIDENCE—FRAUD.—A false and fraudulent promise to obtain a permit to locate a telegraph line cannot be shown by loose statements of a witness as to his recollection of what the agent of the company said as to where it would locate the line, and without stating whether they were made before or after execution of permit.

2. IBID.—OPINION.—DAMAGES.—Estimate of damages to land by construction of telegraph line based on opinion is competent, but it should be based on depreciation in present market value due to the fraudulent entry and construction and not on future conjectural value.

Before KLUGH, J., Spartanburg, December, 1905. Reversed.

Action by Lizzie Mason *et al.* against Postal Telegraph Cable Co. From judgment for plaintiffs, defendant appeals.

*Messrs. Evans & Finley* and *Ravenel & Gantt,* for appellant. *Mr. Evans* cites: *Opinion as to quantum of damages is not admissible:* 73 S. C., 12; 19 S. C., 66; Suth. on Dam., 2970. *Company authorized to construct a telegraph line is not a trespasser by entry:* 37 S. C., 382; 58 S. C., 544; 70 S. C., 530. *One cotenant may give consent to enter:* 70 S. C., 530. *There is no proof of refusal of consent:* 62 S. C., 52; 38 S. C., 308; 59 S. C., 376. *Whether plaintiff signed permit not having been denied should not have been sent to jury:* 66 S. C., 22.

*Mr. Stanyome Wilson,* contra, cites: *Permit was obtained by fraud:* 71 S. C., 146, 154, 530.

July 17, 1906. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The jury found a verdict for the plaintiff for $100 damages, under the allegation that "the defendant oppressively, without right and with a high hand, and with wanton and reckless disregard of the rights of the

plaintiff," entered and trespassed upon the plaintiff's land by stringing wires, cutting down trees and making a road against the will of the plaintiff, and that the defendant denied the right of the plaintiff to compensation. The decisive question is whether there is any evidence to sustain the verdict.

The plaintiff proved the entry and construction of a telegraph line over the land by the defendant company; the location of the line across the land about 100 feet from the public road on which the land fronted, and the opinion of several witnesses acquainted with the surroundings that the land was injured by the construction of the line from $100 to $200. After the refusal of a motion for nonsuit, the defendant introduced a written permit from the plaintiff, authorizing the defendant, for the consideration of $2, to construct and maintain its telegraph lines over the land. When the case was here before on appeal from a judgment in favor of plaintiff, the Court held the defendant was entitled to a new trial, because there was no evidence of fraud in procuring the permit, or that the defendant did anything not properly incident to the exercise of the right granted. 71 S. C., 153. On the second trial, the plaintiff undertook to bring the case within the rule in another case, of *Mason* v. *Telegraph Company,* 71 S. C., 150, and *Burnett* v. *Telegraph Company,* 71 S. C., 146, by an effort to prove that the permit was obtained by fraud in that the defendant induced the plaintiff to sign it by the false and fraudulent representation that the line would be located on the other side of the railroad, where it would be less injurious to the land than it is as actually located. The plaintiff did not herself testify, but relied entirely on the evidence of R. B. Mason to establish the charge of fraud. This witness, after saying he was present when the permit was obtained and twice reiterating that the agent of the company said nothing whatever as to the location of the line, testified as follows: "Q. Which side of the land was it to be on? A. I think this side of the railroad, as well as I remember. Q. I want you to give the

best of your recollection? He said he would go on this side of the railroad? A. Yes, sir. Q. Were there some poles already on that side of the railroad? A. The Southern Road has got some poles along there. Q. That is all he said as to where he was going to locate the line? A. Yes, sir; as well as I remember, he said he was going to put it on this side of the railroad."

What the witness meant by "this side of the railroad," is left in obscurity, and therefore we are unable to say whether or not the line is located as the agent said it would be, if indeed the agent said anything about the location. If this testimony constitutes a scintilla of evidence that the defendant made a representation as to the location, the scintilla is so vague as to be almost formless and so contradictory as to be almost if not completely self-destructive.

But assuming the agent, at some time during the interview, did say where he would locate the line, there is not a particle of evidence indicating whether he said this as a false and fraudulent promise inducing the plaintiff to give the permit, or made the statement merely as an expression of his intention after the permit had been signed. After the rights of the parties had been fixed by the written paper an expression of intention as to location would not be binding on defendant, and could not avail the plaintiff. The burden was on the plaintiff to prove a false and fraudulent promise as an inducement to the permit, and this she has failed to do. The motion to direct a verdict for the defendant on the ground that there was no testimony to support a recovery should have been granted.

Several witnesses, after testifying to their familiarity with the 'surroundings, were allowed to give their estimate as to the damage to the land by the construction of the telegraph line. This evidence was competent. *Mauldin* v. *Ry. Co.,* 73 S. C., 12. But as there is to be a new trial it may be well to say these opinions should be based on the depreciation in the present market value of the land, due

to defendant's fraudulent entry and construction of the line, if such fraudulent entry and construction should be proved, and not on any future conjectural value.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the cause remanded to that Court for a new trial.